# IN THE SUPREME COURT OF IOWA

No. 12–1542

Filed November 22, 2013

**STATE OF IOWA,**

Appellant,

vs.

**MARC A. HAGEN,**

Appellee.

Appeal from the Iowa District Court for Bremer County, Colleen D. Weiland, Judge.

The State seeks discretionary review of a district court's denial of penalties and interest in a restitution order arising from a criminal defendant's guilty pleas for failure to file or pay taxes. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, and Kasey E. Wadding, County Attorney, for appellant.

John W. Holmes of Holmes & Holmes, Waterloo, for appellee.

**ZAGER, Justice**.

Marc Hagen pled guilty to four counts of fraudulent practices, willful failure to file or pay taxes, in violation of Iowa Code section 422.25(1)(5) (2005).[1]  The State sought as restitution Hagen's unpaid taxes, penalties, and interest.  The district court, after a restitution hearing, ordered Hagen to pay restitution in the form of unpaid taxes, but denied the State's request for penalties and interest as part of the restitution order.  The State claims the district court erred by not ordering Hagen to pay the statutory penalties and statutory interest as part of the restitution order.  For the reasons set forth below, we reverse the district court and remand for further proceedings consistent with this opinion.

## I.  Background Facts and Proceedings.

Marc Hagen was charged with four counts of fraudulent practices for willfully failing to file his Iowa income tax returns and pay taxes for years 2006 through 2009.  The State alleged violations of Iowa Code section 422.25(1)(5).  Three of the counts were class "D" felonies because the alleged amount of Hagen's unpaid tax obligation for three of the years exceeded $1000.  One count was an aggravated misdemeanor because Hagen's unpaid tax obligation for one of the years was greater than $500, but less than $1000.  For the same period of years, the State also charged Hagen with four counts of tax evasion in violation of Iowa Code section 422.25(1)(8).  These counts were all punishable as class "D" felonies.

In February 2012, the State offered to dismiss the four counts of tax evasion in exchange for Hagen's guilty pleas to the four counts of

---

[1]Unless otherwise noted, all references are to the 2005 Iowa Code.

fraudulent practices for failing to file tax returns and pay the taxes. Under the terms of the plea agreement, Hagen was required to pay restitution to the Treasurer of the State of Iowa.

The following month, Hagen entered written guilty pleas to the four counts of fraudulent practices. In April 2012, the district court engaged Hagen in a plea colloquy during which Hagen acknowledged that, for each of the years from 2006 through 2009, he willfully failed to file Iowa individual income tax returns and failed to pay the taxes. The district court accepted Hagen's guilty pleas.

On April 27, 2012, the State filed a statement of restitution seeking restitution of $20,385.19. Accompanying the statement of restitution was a summary prepared by the Iowa Department of Revenue (department) explaining the amounts sought as restitution. For each of the years from 2006 through 2009, the State sought unpaid taxes, penalties, and interest. In total, the State sought $10,355 in unpaid taxes, $8237.40 in penalties representing a seventy-five percent civil fraud penalty and a "2210 penalty,"[2] and $1792.79 in interest, which was calculated through June 2012. Hagen initially objected to the statement of restitution on the ground that he lacked the ability to pay restitution.

On May 29, 2012, the district court sentenced Hagen to five years in prison for the three felony counts of fraudulent practices and two years in prison for the aggravated misdemeanor count of fraudulent practices. The sentences were to run concurrently. The district court suspended the sentences and fines and placed Hagen on supervised probation. The court also ordered that Hagen pay restitution. The court

---

[2]The "2210 penalty" is a percentage penalty imposed on individuals who fail to make required quarterly estimated tax payments. *See* Iowa Admin. Code r. 901—49.6.

reserved its determination of the amount of restitution for a later hearing.

At the restitution hearing conducted on July 23, 2012, the State submitted the summary prepared by the department. The State also provided the testimony of the department auditor who prepared the summary. The auditor explained the summary and how she calculated the amount of unpaid taxes, penalties, and interest sought by the State. The State reiterated its request that the court order Hagen to pay $20,385.19 in restitution. Hagen objected to the imposition of interest and the fraud penalty as parts of the order for restitution. Hagen also asserted the department was not a "victim" for purposes of restitution.

After the hearing, the court entered its restitution order. It ordered Hagen to pay as restitution $10,355, which represented unpaid taxes due for the years 2006 through 2009. The court concluded, however, that it could not require Hagen, as part of a criminal restitution order, to pay either the penalties or interest sought by the State. The court thus denied the State's request for $8237.40 in penalties and $1792.79 in interest. The State sought discretionary review of the district court's ruling denying the State's request for penalties and interest in the restitution order. We granted discretionary review.

## II. Issues on Appeal.

There are three issues on appeal. First, we must decide whether the State is a victim for purposes of the restitution statute. Second, we must determine whether the district court erred by failing to order penalties as part of the restitution order. Finally, we must decide whether the court erred by failing to impose interest on the unpaid taxes as part of the restitution order.

### III. Standard of Review.

We review restitution orders for correction of errors at law. *State v. Jenkins*, 788 N.W.2d 640, 642 (Iowa 2010). In reviewing a restitution order "we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001). Questions of statutory interpretation also are reviewed for correction of errors at law. *State v. Romer*, 832 N.W.2d 169, 174 (Iowa 2013).

### IV. Discussion.

**A. Other Arguments of the Defendant.** Before discussing the issues preserved in this appeal, we will address two additional arguments raised by Hagen for the first time in this appeal.

1. *Lack of sufficient information.* Hagen does not dispute the underlying amount of unpaid Iowa taxes assessed against him as part of the restitution order.[3] Rather, Hagen first insists that he lacked sufficient information at the time of the July 23 restitution hearing to determine whether the amounts sought by the State as restitution were correct. We disagree.

Iowa Code section 910.3 requires the prosecution's statement of restitution to be submitted "no later than thirty days *after* sentencing." Iowa Code § 910.3 (emphasis added). The record clearly discloses the State filed its statement of restitution with the sentencing court on April

---

[3]Hagen did not file an appeal or cross-appeal on the issue of the underlying tax due of $10,355 as determined by the district court. Therefore, this issue has not been preserved for appeal. *See State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002) (requiring party to raise issue with district court, get a ruling from the district court, and raise the issue again on appeal). Hagen's failure to preserve this issue for appeal does not, however, diminish his right to seek modification of his restitution plan under Iowa Code section 910.7. *See* Iowa Code § 910.7. This section "permits an offender who is dissatisfied with the amount of restitution required by the plan to petition the district court for a modification." *State v. Swartz*, 601 N.W.2d 348, 354 (Iowa 1999).

27, 2012, more than a month before Hagen was sentenced on May 29, and nearly three months before the restitution hearing. The State attached to its statement of restitution an exhibit prepared by a department auditor explaining the amounts the State sought and the calculations used to determine the amounts. Hagen filed an objection to restitution on May 17, but then argued only that he could not afford to pay restitution.

At the restitution hearing on July 23, the court accepted into evidence the same exhibit the State had attached to the initial statement of restitution. The auditor who prepared the exhibit testified at the restitution hearing, and Hagen's attorney cross-examined her. We conclude that Hagen had both sufficient information and sufficient opportunity to determine whether the restitution amounts sought by the State were correct.

2. *Lack of sufficient proof.* Hagen argues the State did not prove he had the requisite intent to support imposition of the seventy-five percent civil fraud penalty. *See id.* § 421.27(4)(*a*) (requiring assessment of a seventy-five percent penalty "[i]n case of willful failure to file a return . . . with the intent to evade tax"). There is serious doubt whether Hagen successfully preserved this issue for appeal. From a review of the record, it is questionable whether Hagen urged the sufficiency issue at the restitution hearing.[4] *See Johnston Equip. Corp. of Iowa v. Indus. Indem.*, 489 N.W.2d 13, 16 (Iowa 1992) (holding that "a successful party need not cross-appeal to preserve error on a ground urged but ignored or rejected in trial court"). In any event, we conclude the State did prove Hagen had the requisite intent to support imposition of the civil fraud penalty.

---

[4]Hagen's attorney stated, "I don't think there's a—there was a fraudulent intent not to pay tax." This is the only statement in the record on this issue.

The State must prove fraud by clear and convincing evidence. *Clark v. Iowa Dep't of Revenue & Fin.*, 644 N.W.2d 310, 318 (Iowa 2002). Hagen, a dentist, explains his failures to file or pay his Iowa income taxes as bad accounting and business practices, combined with a misunderstanding of the tax laws. But Hagen did understand the law; he just chose to disregard it. During the plea colloquy conducted in April 2012, the result of which was Hagen's conviction on four counts of fraudulent practices, Hagen admitted understanding that he had to file tax returns. In spite of appreciating his obligation, he also admitted that he decided not to file his returns. Further, the minutes of testimony filed with the State's trial information, which Hagen consented to as further factual support for his pleas, revealed a longer period of unfiled tax returns and unpaid taxes than those years for which he was charged and ultimately convicted. Years of failing to file or pay his taxes resulted in large balances of unpaid state and federal taxes. Hagen's failure to pay his Iowa income taxes, or even to file his tax returns, cannot be attributed simply to a lack of sophistication and a misunderstanding of the law. This was not excusable neglect, but fraudulent practices to which he pled guilty. Hagen's failures to file or pay taxes demonstrate his intent to evade taxes. The State provided clear and convincing evidence to support the imposition of the civil fraud penalty.

**B. State as Victim.** Hagen asserts that the State is not a victim under Iowa Code chapter 910. Iowa Code section 910.2 mandates that courts shall order restitution to be made by offenders "to the victims of the offender's criminal activities." Iowa Code § 910.2. *Id.* § 910.1(5). He contends that because the State is a party to this case, it cannot also be a victim for purposes of restitution. The State argues that Iowa courts have repeatedly upheld restitution orders requiring repayment of

damages to governments and other entities. Therefore, the State insists it is entitled to restitution.

All three issues on appeal turn on statutory interpretation. To resolve the issues, we must begin with the statutes in question. *See McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010) (explaining that when resolving issues of statutory interpretation, "the statute in dispute is our starting point"). "When we interpret a criminal statute, our goal 'is to ascertain legislative intent in order, if possible, to give it effect.' " *State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008) (quoting *State v. Conley*, 222 N.W.2d 501, 502 (Iowa 1974)). We will look no further than a statute's express terms when its language is clear. *Id.* We adhere to the rule of lenity, which guides us to resolve ambiguous criminal statutes in favor of the accused. *See Romer*, 832 N.W.2d at 176 (noting that we resolve ambiguities in criminal statutes in favor of the accused); *State v. Hearn*, 797 N.W.2d 577, 585 (Iowa 2011) (explaining the rule of lenity). Although we resolve ambiguities in favor of the accused, criminal statutes nevertheless "must be construed reasonably and in such a way as to not defeat their plain purpose." *State v. Peck*, 539 N.W.2d 170, 173 (Iowa 1995). "Finally 'the legislature may define the terms it uses, and when it does, those definitions are the foundation of our analysis.' " *Zimmer v. Vander Waal*, 780 N.W.2d 730, 733 (Iowa 2010) (quoting *State v. Kamber*, 737 N.W.2d 297, 299 (Iowa 2007)).

One purpose of restitution is to compensate victims of crime. *See Bonstetter*, 637 N.W.2d at 166 (explaining that restitution "serves multiple purposes" including compensation); *Teggatz v. Ringleb*, 610 N.W.2d 527, 529 (Iowa 2000) (explaining that "the purpose of the restitution statute is to protect the public by compensating victims of criminal activities"). Generally, when ordering restitution, a court must

first identify the victim entitled to restitution. *Bonstetter*, 637 N.W.2d at 165. A "victim," for purposes of Iowa Code chapter 910, is "a person who has suffered pecuniary damages as a result of the offender's criminal activities." Iowa Code § 910.1(5). Other than exceptions inapplicable in this case, "[p]ecuniary damages" are "all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event."[5] *Id.* § 910.1(3). There must be a causal relationship between the damages the victim suffers and the conduct for which the defendant is ultimately convicted. *Bonstetter*, 637 N.W.2d at 165; *Earnest v. State*, 508 N.W.2d 630, 633 (Iowa 1993); *State v. Holmberg*, 449 N.W.2d 376, 377 (Iowa 1989); *State v. Starkey*, 437 N.W.2d 573, 574 (Iowa 1989).

This court has not had the opportunity to explore specifically whether the State may be a victim under the definition set forth in Iowa Code section 910.1(5). The court of appeals has examined the issue and concluded that "[t]he State or a governmental agency may be a victim entitled to restitution." *State v. Stewart*, 778 N.W.2d 62, 64 (Iowa Ct. App. 2009); *see also State v. Wagner*, 484 N.W.2d 212, 220 (Iowa Ct. App. 1992) (remanding case to trial court for entry of reduced restitution order requiring defendant to repay the state). In *Stewart*, however, the

---

[5]We do not view Iowa Code section 910.1(3) as imposing a requirement that, in order to recover pecuniary damages, the victim must first have satisfied all procedural prerequisites to a civil suit. That is, we do not interpret the language "could recover against the offender in a civil action," Iowa Code § 910.1(3), to require that, before the State may receive restitution in this criminal tax case, the Iowa Department of Revenue must first exhaust administrative remedies. *See* Iowa Code §§ 422.28, .29 (permitting judicial review director's actions regarding tax appeal); *id.* § 17A.19(1) (mandating that parties first exhaust administrative remedies before seeking judicial review). Rather, we interpret the restitution statute to be an alternative remedy available to the department. *See* Iowa Code § 422.26(8) ("The attorney general shall, upon the request of the director, bring an action at law or in equity, as the facts may justify, without bond, to enforce payment of any taxes and penalties . . . .").

court of appeals limited the instances in which the state may be a victim for purposes of Iowa Code chapter 910 to those where the state "suffered a direct economic loss as a result of the crime." *Stewart*, 778 N.W.2d at 64 (holding that the Medicaid program was not a victim entitled to restitution for expenses paid for an assault victim's medical treatment).

In *Stewart*, the court of appeals did not cite *State v. Stessman*, 460 N.W.2d 461 (Iowa 1990) for its conclusion that to be a victim the state must have suffered a direct economic loss. We did, however, allude to that principle in *Stessman*, though in that case the putative victim was a business entity, not the state. *Stessman*, 460 N.W.2d at 463–64. In that case, due to Stessman's criminal deception, Dick Witham Chevrolet performed repairs on Stessman's car, and General Motors ultimately reimbursed Dick Witham for the cost of those repairs. *Id.* at 464 The court ordered Stessman to pay restitution. *Id.* at 463. Stessman challenged the restitution order, arguing that General Motors was not a victim under the restitution statute. *See id.* at 464. Without analyzing the statutory language, we concluded that General Motors was a victim because the "defendant's actions caused direct financial harm to General Motors." *Id.*

In this case, we need not decide whether the State must have suffered direct financial harm to be entitled to restitution. The State fits within the definition of "victim" for purposes of Iowa Code chapter 910. A victim under Iowa Code section 910.1 is "a person who has suffered pecuniary damages as a result of the offender's criminal activities." Iowa Code § 910.1(5). Because Iowa Code section 910.1 does not define "person," we apply Iowa Code section 4.1, which provides that the statutory term "person" includes "government." *See id.* § 4.1(20); *see also Arends v. Iowa Select Farms, L.P.*, 556 N.W.2d 812, 815 (Iowa 1996)

(applying Iowa Code section 4.1 where a statute did not define "person" and interpreting "person" to include a business entity). Hagen's failure to file or pay his taxes deprived the State of tax revenue, thus causing the State pecuniary damages as a result of his criminal activity. *See Clark,* 644 N.W.2d at 318 (explaining that one purpose of the civil fraud penalty imposed on tax evaders is to compensate the state for actual lost tax revenue). Clearly, there is a direct causal relationship between the damages the State suffered, in the form of lost tax revenue, and the conduct for which Hagen was convicted, the failure to file or pay his taxes. *See Starkey,* 437 N.W.2d at 574 (requiring a causal connection between victim's damages and conduct for which the defendant was convicted).

Moreover, as the State pointed out in its brief, our previous restitution cases have not interpreted the word "person" in Iowa Code section 910.1 so restrictively as to permit restitution only for individual victims. *See Bonstetter,* 637 N.W.2d at 165–67 (affirming restitution order to the extent that it ordered repayment of damages to defendant's employer for lost profits); *State v. Schares,* 548 N.W.2d 894, 896 (Iowa 1996) (finding that the Archdiocese of Dubuque was not an "insurer" within the meaning Iowa Code section 910.1 and therefore upholding restitution order); *State v. Hennenfrent,* 490 N.W.2d 299, 300 (Iowa 1992) (finding that a bank was not an "insurer" for purposes of Iowa Code section 910.1 and therefore upholding restitution order); *Stessman,* 460 N.W.2d at 464 (upholding an order requiring a criminal defendant to pay restitution to vehicle manufacturer). Most important, we previously upheld a restitution order requiring a criminal defendant to repay the University of Iowa, a state institution, for the cost of an audit resulting from the defendant's criminal activity. *See State v. Taylor,* 506 N.W.2d

767, 769 (Iowa 1993) (affirming district court's restitution order that required defendant to repay the cost of an audit); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Fields*, 790 N.W.2d 791, 794 (Iowa 2010) ("He was also ordered to pay civil penalties and to make full restitution of taxes, penalties, and interest to the State of Iowa for the tax liability incurred . . . ."). Ordering Hagen to pay restitution to the State is also consistent with both the plain meaning of the restitution statute and the purposes of restitution: to compensate victims and rehabilitate defendants. *See Bonstetter*, 637 N.W.2d at 166; *Teggatz*, 610 N.W.2d at 529; *State v. Kluesner*, 389 N.W.2d 370, 372–73 (Iowa 1986).

Hagen's argument that the State cannot be a victim because it is also a party must fail. The State will inevitably be a party to a criminal prosecution, whether the victim of the crime is a state agency or an individual. *See* Iowa Code § 801.4 (defining "prosecution" as "the commencement . . . of a criminal proceeding . . . and pursuit of that proceeding to final judgment *on behalf of the state*" (emphasis added)). Hagen's interpretation of "victim" would deprive state agencies, like the department, of the entitlement to restitution granted to all other crime victims. *See id.* § 910.2(1) (requiring court to order restitution to the victims of the offender's criminal activities); *id.* § 915.100(1) ("Victims . . . have the right to recover pecuniary damages . . . ."). Each time the State effectively performed its prosecutorial function and convicted a criminal defendant, the State would forsake restitution. We cannot conclude that the legislature intended such an absurd result. *See Rivera v. Woodward Res. Ctr.*, 830 N.W.2d 724, 733 (Iowa 2013) (explaining that we seek to avoid absurd results when interpreting statutes).

**C. Penalties.** The State contends that by failing to order payment of the fraud penalty and the 2210 penalty as part of its restitution order,

the district court failed to apply the clear language of the restitution statute. Hagen, for his part, offers no direct response to this point.

Restitution is "a creature of statute." *State v. Akers*, 435 N.W.2d 332, 335 (Iowa 1989); *see Earnest*, 508 N.W.2d at 633 (stating that restitution is "purely" statutory). "The district court is confined to the statute in determining what damages to include in the restitution order." *Bonstetter*, 637 N.W.2d at 166. When ordering criminal restitution, a court applies Iowa Code chapter 910. *See Jenkins*, 788 N.W.2d at 643 ("Iowa Code chapter 910 generally provides the framework for imposition of the criminal sanction of restitution."). Restitution is mandatory "[i]n all criminal cases in which there is a plea of guilty, verdict of guilty, or special verdict upon which a judgment of conviction is rendered." Iowa Code § 910.2; *see also State v. Jackson*, 601 N.W.2d 354, 356 (Iowa 1999) (finding that restitution must be ordered by sentencing judge for correctional fees certified by county sheriff); *State v. Watts*, 587 N.W.2d 750, 751 (Iowa 1998) (noting that restitution is mandatory when a defendant pleads guilty); *Kluesner*, 389 N.W.2d at 373 (requiring that sentencing court order restitution where defendant pled guilty and was granted a deferred judgment).

" '*Restitution*' means payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution." Iowa Code § 910.1(4). However, there is also a second component of restitution. In addition to defining restitution to be pecuniary damages to a victim, the restitution statute provides, " '*Restitution'* also includes fines, penalties, and surcharges . . . ." *Id.* § 910.1(4). No doubt penalties are to be ordered as part of a restitution order. Aside from the definitional provision in chapter 910, though, other provisions suggest the term "penalties" in the restitution chapter

does not embrace the civil tax penalties sought here by the State. Iowa Code section 910.2 directs to whom each component of a restitution order should be paid: "[T]he sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities, [and] to the clerk of court for fines, penalties, [and] surcharges . . . ." *Id.* § 910.2. Thus, a victim receives the pecuniary damages component of a restitution order, but the clerk of court receives penalties. *See id.* (directing further that "victims shall be paid in full before fines, penalties, and surcharges . . . are paid"). A plain reading of these two provisions indicates that the term "penalties" used in the restitution statute does not include civil penalties for late taxes, but rather refers to penalties payable to the clerk of court as criminal penalties.

If the State is to receive the civil tax penalties in this case, then those penalties must fall within a different statutory term, and we believe they do. As noted, "pecuniary damages" are "all damages . . . a victim could recover . . . in a civil action arising out of the same facts or event, except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium." *Id.* § 910.1(3). This definition "clearly indicate[s] a legislative intent that restitution to a victim depend[s] on what the victim could obtain in a civil action against the defendant." *State v. Paxton*, 674 N.W.2d 106, 108–09 (Iowa 2004) (holding that a restitution amount should be reduced dollar-for-dollar for payments previously made to a victim by a defendant's employer).

The tax statutes and rules promulgated under those statutes clearly impose penalties on individuals who do not file or pay taxes. The civil fraud penalty, imposed under Iowa Code section 421.27(4), mandates a seventy-five percent penalty where an individual willfully

fails to file his or her return with intent to evade tax. Iowa Code § 421.27(4). Iowa Code section 422.16(11), under which the 2210 penalty is imposed, requires imposition of an additional amount to the tax liability of an individual who fails to make quarterly estimated tax payments. *Id.* § 422.16(11). Department rule 49.6, which is "intended to implement Iowa Code section 422.16," provides that "[t]he civil penalty . . . for underpayment of federal estimated tax also applies to persons required to make payments of estimated tax under provisions of the Iowa Code." Iowa Admin. Code r. 701—49.6. The department would recover the civil tax penalties from Hagen if it sought to recover them in a civil action. *See* Iowa Code § 422.26(8) (directing the attorney general to "bring an action at law or in equity, as the facts may justify . . . to enforce payment of any taxes and penalties"); *cf. Paxton*, 674 N.W.2d at 109 (analyzing the "victim's potential civil recovery" to determine whether a reduction in restitution was appropriate); *Bonstetter*, 637 N.W.2d at 169 (examining what a victim could recover in a civil conversion case); *Taylor*, 506 N.W.2d at 769 (concluding that the cost of an audit would be a proper element of recovery in a civil conversion case).

Civil tax penalties are not among the specific exclusions from the definition of pecuniary damages. The only possible exception which could arguably prevent the collection of these tax penalties is the "punitive damages" exception. *See* Iowa Code § 910.1(3) (excluding punitive damages from the definition of pecuniary damages). But the purposes of punitive damages and civil tax penalties differ, suggesting that the civil penalties do not fall within this statutory term. Punitive damages are awarded to punish defendants and to deter the defendant and others from repeating the same conduct. *See, e.g.*, *In re the Estate of Vajgrt*, 801 N.W.2d 570, 575 (Iowa 2011) (explaining the purposes of

punitive damages); *Hamilton v. Mercantile Bank of Cedar Rapids*, 621 N.W.2d 401, 407 (Iowa 2001) (same). By contrast, the civil tax penalties to which the department is statutorily entitled serve a different, nonpunitive purpose. In *Clark*, we explained that "[t]he underlying purpose of the [seventy-five percent] tax penalty is to reimburse the government's expenses for auditing the returns and the actual loss in revenue resulting from the taxpayer's fraud." *Clark*, 644 N.W.2d at 318. At the restitution hearing, the department auditor explained the process by which she reconstructed Hagen's income and determined the amount of taxes that he should have paid. The process required the expense of significant amounts of time and effort, and the civil tax penalties compensate the State, the victim of Hagen's criminality, for that time and effort. Accordingly, the civil tax penalties sought by the State in this case are properly awarded as an element of pecuniary damages in the restitution order. The district court erred in not including the requested civil tax penalties as part of its restitution order.

**D. Interest.** The State also contends the district court erred by failing to order Hagen to pay interest on his unpaid taxes. Although Hagen disputes the State's contention, there is no controversy among the State, Hagen, or the district court about the major cases and statutes that inform the outcome of the dispute. The district court concluded that, based on our holding in *Akers*, it could not impose postjudgment interest on restitution. The district court did not address the issue of prejudgment interest.

In *Akers*, the defendant pled guilty to second-degree theft after stealing and damaging a pickup truck. *Akers*, 435 N.W.2d at 333. At sentencing, the district court ordered the defendant to pay restitution of $3436 plus ten percent annual interest. *Id.* Akers appealed the

imposition of interest on the restitution order. *Id.* After concluding that interest was not a component of restitution under Iowa Code chapter 910, we considered "whether restitution orders can be considered 'judgments' or 'decrees'" within Iowa Code section 535.3. *Id.* (quoting Iowa Code § 535.3 (1987)). At the time, Iowa Code section 535.3 provided that " '[i]nterest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year . . . . The interest shall accrue from the date of the commencement of the action.' " *Id.* (quoting Iowa Code § 535.3 (1987)).

A specific prior holding, the language of Iowa Code section 535.3, and rules of law factored into our holding in *Akers*. We began our analysis of the issue in *Akers* by scrutinizing our holding in *State v. Haines*, 360 N.W.2d 791 (Iowa 1985). *Akers*, 435 N.W.2d at 334. In *Haines*, a criminal defendant argued that the provision in our restitution statute permitting the state to recover as part of a restitution order the fees of court-appointed counsel violated the Equal Protection Clause of the Fourteenth Amendment. *Haines*, 360 N.W.2d at 792–93. Haines relied on a United States Supreme Court case invalidating a Kansas recoupment statute that treated recoupment as a " 'judgment.' " *Id.* at 794–95 (quoting *James v. Strange*, 407 U.S. 128, 135, 92 S. Ct. 2027, 2031, 32 L. Ed. 2d 600, 607 (1972)). The Kansas statute did not give the criminal defendant any of the protections normally offered to civil judgment debtors in Kansas. *Id.* at 795. Citing the lack of protections, the United States Supreme Court struck down the Kansas statute because the Court found the statute punitive and discriminatory.[6] *Id.* (citing *James*, 407 U.S. at 142, 92 S. Ct. at 2035, 32 L. Ed. 2d at 611).

---

[6]Notably, following *James*, the United States Supreme Court upheld against an equal protection challenge an Oregon recoupment statute that, unlike the statute at issue in *James*, preserved for criminal offenders all the rights accorded civil judgment

We held in *Haines* that our restitution statute did not violate the equal protection rights of criminal defendants because Iowa did not treat restitution as a judgment. *Id.* Iowa's restitution statute, moreover, gave criminal defendants certain protections not available to civil judgment debtors, such as allowing the defendant to perform community service instead of submitting cash recoupment and considering the defendant's ability to pay. *Id.* Based on our examination of *Haines,* we explained in *Akers* that the legislature "did not intend restitution orders to be treated like civil judgments." *Akers*, 435 N.W.2d at 335.

We also considered an implication of the specific language of Iowa Code section 535.3 and rules of law. We noted that "section 535.3 refers to interest accruing from 'the date of the commencement of the action.' " *Id.* (quoting Iowa Code § 535.3 (1987)). That specific language seemed to put the "judgments and decrees" used by section 535.3 "in the civil context, implicitly excluding criminal restitution orders." *Id.*

We also relied on rules of law to conclude that "interest on restitution amounts is not proper without explicit statutory authorization." *Id.* We explained that at common law, judgments did not bear interest, meaning that the right to interest on judgments is statutory. *Id.* Because the statutory right to interest is in derogation of the common law, we found that "statutes providing for interest on judgments must be strictly construed." *Id.* With these considerations in mind, we concluded in *Akers* that permitting interest on restitution amounts "would doubly violate the rule of strict statutory construction to

_____

debtors and additional protections. *See Fuller v. Oregon,* 417 U.S. 40, 49–50, 94 S. Ct. 2116, 2122–23, 40 L. Ed. 2d 642, 651–52 (1974) (concluding Oregon's statute was "a far cry from the kind of invidious discrimination that the Equal Protection Clause condemns").

infer, first, that restitution is a 'judgment' at all under section 535.3 and, second, that it is the type of judgment to which this section applies." *Id.*

Later, we considered whether a court could impose prejudgment interest as part of a restitution order, albeit under a different statute from the one at issue in *Akers.* In *State ex rel. Miller v. Santa Rosa Sales & Marketing Inc.*, a case brought under Iowa's consumer fraud statute, we declined to infer that a restitution order was a judgment or decree under Iowa Code section 535.3, holding "that the trial court's award of prejudgment interest on the restitution award was improper." *Santa Rosa*, 475 N.W.2d 210, 220 (Iowa 1991).

In 1992, the legislature amended Iowa Code chapter 910 to include a new section. That new section, which comprises two subsections, provides:

> 1. An order requiring an offender to pay restitution constitutes a judgment and lien against all property of a liable defendant for the amount the defendant is obligated to pay under the order and may be recorded in any office for the filing of liens against real or personal property.

> 2. A judgment of restitution may be enforced by the state, a victim entitled under the order to receive restitution, a deceased victim's estate, or any other beneficiary of the judgment in the same manner as a civil judgment.

1992 Iowa Acts ch. 1242, § 37 (codified at Iowa Code § 910.7A (1993)).

The State's contention that interest should be imposed on a restitution order revolves around this 1992 amendment. According to the State, the legislature by the addition of Iowa Code section 910.7A to chapter 910 made clear its intention to alter the results in *Akers* and *Santa Rosa.* The State argues that section 910.7A, which pronounces that "[a]n order requiring an offender to pay restitution constitutes a judgment," interlocks with Iowa Code section 535.3, which, as noted above, declares that "[i]nterest shall be allowed on all money due on

judgments and decrees of courts at a rate calculated according to section 668.13." Iowa Code § 910.7A(1) (first quote); *id.* § 535.3(1) (second quote). A restitution order is a judgment, the State maintains, and judgments accrue interest.

Hagen counters that the amendment, by itself, is not sufficiently clear to permit us to infer that the legislature intended for courts to impose interest on restitution orders. If the legislature had intended interest to be imposed on restitution orders, Hagen argues, then the legislature could have provided express direction as to when that interest begins to accrue. Accordingly, Hagen contends that the legislature did not intend to alter the result in *Akers*.

In both *Akers* and *Santa Rosa*, we resisted inferring that restitution was a judgment. *Akers*, 435 N.W.2d at 335; *Santa Rosa*, 475 N.W.2d at 220. The unambiguous 1992 amendment, codified in Iowa Code section 910.7A, obviates any need to make an inference and allays the concerns we had in those cases about permitting courts to order interest without explicit statutory authorization. Restitution is a judgment and is enforceable "in the same manner as a civil judgment." *Id.* § 910.7A(2). The State is correct that under Iowa Code section 535.3 "[i]nterest shall be allowed on all money due on judgments." Because Iowa Code section 910.7A is unambiguous, we need not delve more deeply to determine whether the legislature *intended* by the adoption of the section to alter or legislatively overrule *Akers* and *Santa Rosa*. *See Kamber*, 737 N.W.2d at 298 (" 'When a statute's language is clear, we look no further for meaning than its express terms.' " (quoting *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001))). The express terms of section 910.7A require a different result than the outcomes reached in those cases.

In light of our conclusion, two questions remain. First, there is still the question whether the State is entitled to prejudgment interest, or whether the State is limited to interest from the date of the restitution order. Second, we must decide at what rate the restitution amount draws interest. Hagen observes that Iowa Code section 910.7A advances no guidance as to when the interest should begin to accrue or what the interest rate should be.

In *Akers*, we cited three statutes as potential sources for an award of prejudgment interest, none of which contained an "explicit provision for the imposition of interest on restitution amounts." *Akers*, 435 N.W.2d at 333–34. After examining the statutes, we reversed the sentencing court's award of interest as part of a restitution order, concluding that interest "is simply not one of the components of " 'restitution' under the statutory definition." *Id.* at 334. We viewed the enumeration of specific components in the definition of restitution as indicative of a legislative intent to exclude interest from restitution orders. *Id.* The search for an explicit reference to "interest" or "prejudgment interest" in the definition of restitution yielded then, as it yields today, no success. We failed though to analyze in *Akers* a term that was then, and is now, explicitly included in the definition of restitution, "pecuniary damages." *See* Iowa Code § 910.1(3). Under chapter 910, "pecuniary damages" are "all damages . . . which a victim could recover against the offender in a civil action arising out of the same facts or event." *Id.* As we explained with respect to the civil tax penalties issue, the definition of pecuniary damages indicates a legislative intent that restitution should turn on the damages a victim could recover in a civil action against the criminal defendant. *See Paxton*, 674 N.W.2d at

108 (describing legislative intent behind definition of pecuniary damages).

We examine the State's potential civil recovery to determine whether the inclusion of prejudgment interest is appropriate. *See id.* at 109 (analyzing the "victim's potential civil recovery" to determine whether a reduction in restitution was appropriate); *Bonstetter*, 637 N.W.2d at 169–70 (concluding that the cost of an audit paid by a victim was recoverable as part of a restitution order but denying it because the prosecutor did not present sufficient evidence of the audit's cost); *Taylor*, 506 N.W.2d at 768–69 (concluding that the cost of an audit was properly included in a restitution order); *cf. People v. Law*, 591 N.W.2d 20, 24–25 (Mich. 1999) (concluding that interest was an element of restitution on the basis of a statute that directed courts to consider the amount of loss sustained by victims); *State v. Brewer*, 989 P.2d 407, 412 (Mont. 1999) (reviewing statute that provided for restitution for victims who had sustained pecuniary loss to determine whether a victim would recover interest in a civil action). The department would recover the interest to which it is statutorily entitled if it sought to enforce Hagen's tax obligations under its civil enforcement authority. *See Ashland Oil, Inc. v. Iowa Dep't of Revenue & Fin.*, 452 N.W.2d 162, 164 (Iowa 1990) (concluding that "interest is allowed upon the tax deficiency and that the collection of interest upon the total tax will encourage taxpayers to report and pay the correct tax"); *cf.* Iowa Code § 422.26(8) (directing the attorney general, if justified by the facts, to bring an action to recover taxes).

In this case, there is a clear statutory source for the award of prejudgment interest to the State. The department is entitled to interest "at the rate in effect under section 421.7 for each month counting each

fraction of a month as an entire month, computed from the date the return was required to be filed." Iowa Code § 422.25(2). According to the exhibit prepared by the department auditor, and offered at the restitution hearing, interest on Hagen's unpaid taxes for the prior year began to accrue in May of the following year (i.e., interest began to accrue on May 1, 2007 for Hagen's 2006 unpaid taxes). *See id.* § 422.21 ("Returns . . . shall be filed with the department on or before the last day of the fourth month after the expiration of the tax year."). Consistent with this statutory scheme, the statutory interest in this case continued to accrue at varying rates under section 421.7 on the balance of each year of Hagen's unpaid taxes until June 30, 2012. The legislature has enacted interest statutes meant to compensate the State for the loss of revenue that should have been in its possession, and we view the restitution chapter as advancing that goal. *See Ashland Oil,* 452 N.W.2d at 164 ("The collection of interest allows recovery for the use of the money which should have been paid for taxes.").

Moreover, the consonance between the purposes of restitution and the purposes of prejudgment interest convince us that the inclusion of prejudgment interest in the restitution order is appropriate here. *See, e.g., United States v. Patty,* 992 F.2d 1045, 1050 (10th Cir. 1993) (comparing the purpose of restitution under the Federal Victim Witness Protection Act to the purpose of prejudgment interest and holding that prejudgment interest was properly included in a restitution order); *United States v. Smith,* 944 F.2d 618, 626 (9th Cir. 1991) ("Foregone interest is one aspect of the victim's actual loss, and thus may be part of the victim's compensation."); *United States v. Rochester,* 898 F.2d 971, 983 (5th Cir. 1990) (concluding that the purpose of restitution was to make victims whole and therefore upholding award of prejudgment interest).

As restitution compensates victims of criminal activities, *Teggatz*, 610 N.W.2d at 529, awarding interest compensates them for the delay of not receiving money when due. *See* 47 C.J.S. *Interest & Usury* § 65, at 75 (2005) ("The purpose of a statute providing for interest on a money judgment in a civil action is to compensate the prevailing party for any delay in the payment of money damages."). Prejudgment interest also is a form of compensation, the "essential rationale" for which "is to ensure that the injured party is fully compensated for its losses." *Id.* § 106, at 127; *see also Ashland Oil*, 452 N.W.2d at 164 (reasoning that requiring taxpayers to pay interest on unpaid taxes compensates the State for not having money that should have been in its possession). Therefore, an order to pay prejudgment interest is not punitive, "but rather it reflects the lost value of the use of the money awarded." *In re Marriage of Baculis*, 430 N.W.2d 399, 401–05 (Iowa 1988) (stating the purposes of prejudgment interest and holding that prejudgment interest should not be awarded in all dissolution actions).

There is no reason to require the department, after Hagen pled guilty to four counts of willfully failing to file his taxes, to institute another proceeding to finally collect interest to which it is statutorily entitled.[7] *See Bonstetter*, 637 N.W.2d at 165 ("Since restitution is a penal sanction separate from civil remedies, it makes it possible to avoid

---

[7]The department could follow an alternative avenue in seeking to recover damages. *See* Iowa Code § 910.8 ("This chapter and proceedings under this chapter do not limit or impair the rights of victims to sue and recover damages from the offender in a civil action."); *id.* § 915.100(2)(i) ("The right to victim restitution for the pecuniary damages incurred by a victim as the result of a crime does not limit or impair the right of the victim to sue and recover damages from the offender in a civil action."); *Teggatz*, 610 N.W.2d at 532 (holding that a restitution order in a criminal case did not preclude a victim from relitigating the issue of damages in a later civil case). We do not interpret the addition of section 910.7A to the restitution chapter as intended to limit or impair the rights of victims to pursue civil claims against criminal defendants.

the necessity of a separate civil action and ensure the efficient use of time and resources in the sentencing process."). " 'The victim deserves to be fully compensated for the injury by the actor who caused [the damages].' " *Id.* (quoting *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct. App. 1995)); *see also* Iowa Code § 915.100(1) (granting victims the right to recover pecuniary damages); *Dorris v. State*, 656 P.2d 578, 584 (Alaska Ct. App. 1982) (concluding that an award of interest on a restitution order was proper because the purpose of restitution is to make victims whole); *cf. Roberts v. People*, 130 P.3d 1005, 1010 (Colo. 2006) (holding that sentencing courts must order prejudgment interest to fully compensate crime victims). In order to be fully compensated, the State is entitled to receive prejudgment interest as provided by statute.

Finally, we must determine the rate of the postjudgment interest on the restitution order. As Iowa Code sections 422.25(2) and 421.27 are specific to tax liability, and section 535.3 is general to judgments that have no contractual or statutory rate, the tax statutes prevail and thus govern the postjudgment interest rate. *See* Iowa Code § 4.7 (directing courts to interpret specific statute as an exception to a conflicting general statute); *Burton v. Univ. of Iowa Hosps. & Clinics*, 566 N.W.2d 182, 189 (Iowa 1997) (explaining that a specific statute prevails as an exception to a general statute when the two irreconcilably conflict). Accordingly, the postjudgment interest rate is the same as the prejudgment interest rate.

We conclude that the district court erred by not including in the restitution order, prejudgment and postjudgment interest at the statutory rate under Iowa Code section 421.7. However, we must remand the case to the district court for a determination of the appropriate amount of interest to be imposed in the restitution order.

**IV. Disposition.**

We reverse the district court's denial of penalties and interest as part of the restitution order.  We remand the case to the district court for purposes of including the penalties in the restitution order and to determine the amount of prejudgment interest and to provide for postjudgment interest consistent with this opinion.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**