# IN THE COURT OF APPEALS OF IOWA

No. 14-0745
Filed March 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**REBECCA ELLEN MOREDOCK,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano (plea), Christopher L. McDonald (sentencing), and Scott D. Rosenberg (restitution), Judges.

Rebecca Moredock challenges the restitution order entered following her plea of guilty to dependent adult abuse. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, John P. Sarcone, County Attorney, and Celene Gogerty, Assistant County Attorney, for appellee.

Considered by Danilson, C.J., and Potterfield and Bower, JJ. McDonald, J., takes no part.

**POTTERFIELD, J.**

Rebecca Moredock challenges the restitution order entered following her plea of guilty to dependent adult abuse. The restitution amount set by the district court in this case has a reasonable basis in the evidence and is neither speculative nor imaginary. We affirm.

**I. Background Facts.**

In March 2012, Moredock was charged in a five-count trial information with theft in the first degree, dependent adult abuse, tampering with records, and two counts of forgery. She entered a guilty plea to the charge of dependent adult abuse. As part of the plea agreement, the State agreed to dismiss the other counts and recommend a suspended sentence (so long as no new charges or violations arose in the interim), and Moredock agreed to be held responsible for the full amount of restitution, including those related to the dismissed charges.

At the November 12, 2012 plea proceeding, Moredock admitted that in December 2011 she withdrew more than $100 from her uncle's account and placed the money into her personal account without his consent.[1] She acknowledged she took unfair advantage of him and he was later deemed a dependent adult. She described herself as her uncle's caretaker, who helped him with finances, and explained she removed funds from his joint account for his care and placed them in an account to which he did not have access. She acknowledged using his money to pay for a personal cruise and for her criminal defense.

---

[1] The amount withdrawn was $50,000.

Jessman Smith, an attorney for the guardianship and conservatorship of the uncle,[2] submitted a victim impact statement. Mr. Smith appeared at the sentencing hearing[3] and testified that Moredock's actions since pleading guilty had "reached an unprecedented level of obstructionism in the probate court," and requested the court impose a sentence which would include thirty days in jail "not only for what Ms. Moredock has done but what she's forced the victim's attorneys' to do to recover from that and what they fear she will continue to do if she is not jailed for a brief period of time." Pursuant to the plea agreement, the sentencing court ordered Moredock to pay restitution on the dismissed charges, which would be determined at a later date.

The State filed a motion seeking restitution in the amount of $33,620.59, which represented the funds taken from the victim's bank account ($50,000), plus incurred taxes and penalties ($6723.58), plus attorney's fees incurred by the conservatorship ($10,863.87), less recovered funds ($792.96 recovered directly from a bank account in which Moredock had deposited a portion of the funds, $12,500 Moredock had given to her criminal defense attorney recovered by court order, and repayments made directly by Moredock in the amounts of $3,861.00, $84.01, and $16,728.89). Moredock contested the amount. Following a restitution hearing held on October 30 and November 20, 2013, the district court entered a modified order of restitution in the amount of $31,576.98.

Moredock filed a motion for expanded findings. The restitution court determined it had been "presented [with] sufficient evidence at the prior hearing

---

[2] The guardianship and conservatorship were opened in February 2012.
[3] The sentencing hearing was conducted on March 4 and April 22, 2013.

through testimony and exhibits to show the amount of restitution ordered was correct."

Moredock appeals. She contends the district court erred in calculating the amount of restitution owed because she should have been credited for money she spent on her uncle's expenses and for donations consistent with her uncle's prior giving. She also maintains it was error to order her to pay the attorney fees of the conservatorship.

## II. Scope and Standard of Review.

We review a restitution order for correction of errors at law. *State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013). "In reviewing a restitution order 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *Id.* (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)).

## III. Discussion.

Generally, when ordering restitution, a court must first identify the victim entitled to restitution. *Bonstetter*, 637 N.W.2d at 165. A "victim," for purposes of Iowa Code chapter 910, is "a person who has suffered pecuniary damages as a result of the offender's criminal activities." Iowa Code § 910.1(5) (2011). Here, Moredock does not contest that her uncle's conservatorship is a victim.

"Pecuniary damages" are "all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event." *Id.* § 910.1(3). "There must be a causal relationship between the damages the victim suffers and the conduct for which the defendant is ultimately convicted." *Hagen*, 840 N.W.2d at 147.

There is substantial evidence to support the restitution amount ordered. The district court credited Moredock with additional amounts supported by the evidence presented ($107.24 spent by Murdock to cure an overdraft in one of the uncle's bank accounts; $150 in payments for child care during times when Moredock was caring for her uncle; $410, which the court determined was a reasonable allowance paid to the uncle; $400 for physical care costs; and $976.57, which was used to purchase items for her uncle).[4] The district court as fact finder was not required to accept Moredock's assertion of additional credits. *See State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001) (noting deference is owed to the district court's opportunity to assess the credibility of witnesses); *State v. Frake*, 450 N.W.2d 817, 819 (Iowa 1990) ("When determining the credibility of the testimony of witnesses, the trial court may consider . . . the witness's interest in the trial.").

As for the amount of attorney fees the probate court ordered Moredock to pay to the conservatorship,[5] the district court could reasonably determine those

---

[4] We note a twenty-cent discrepancy from its calculation; our calculation results in a sum of $31,576.78.

[5] The State offered into evidence here, the court order entered in probate which states, in part,

> This matter comes on before the Court on an application for attorney's fees under the provisions of section 633.112 Code of Iowa. Rebecca Moredock, the party against which the fees are sought, is essentially maintaining that for the attorney's fees to be assessed under the provisions of Section 633.112, the initial possession must have been wrongful. That is not what Section 633.112 provides. The cited section provides a method for a fiduciary to recover the ward's or decedent's property from one having its possession, regardless of how possession was obtained, as long as there is no claim of right on the party holding the property. . . .
>
> At the hearing held before this Court on January 29, 2013, Ms. Moredock made no claim of right but had refused and continued to refuse to turn over at least one fund which she had specifically been ordered to

fees were causally connected to Moredock's criminal conduct but were not incurred by the State as costs of prosecuting the criminal acts. *Cf. State v. Knudsen*, 746 N.W.2d 608, 610 (Iowa Ct. App. 2008) ("Damages that are a direct result of the defendant's criminal act must be distinguished from the expenses associated with the prosecution of the defendant for the criminal act."). The conservatorship was entitled to be fully compensated, which included the attorney fees ordered by the probate court. *See State v. Hollinrake*, 608 N.W.2d 806, 809 (Iowa Ct. App. 2000) (holding that the defendant's "actions directly caused the need for the independent audit" because "[a] reasonably foreseeable consequence of defendant's taking of money from the county was that the county would need to conduct a thorough audit to be sure that it had uncovered all the defendant's defalcations"); *see also Hagen*, 840 N.W.2d at 155 ("The victim deserves to be fully compensated for the injury by the actor who caused [the damages]." (citations and internal quotation marks omitted)). The record includes the probate court's order finding "the time expended and the charges made were necessary and appropriate to recover the ward's assets." The

---

release by the Court's previous order. The "release" or act to "turn over" required her to sign a document which she refused to do until the January 29 hearing when this Court threatened her with contempt if she failed to execute the required document. . . . Attorney's fees in obtaining the turnover are, indeed, damages sustained by the conservatorship.

No challenge was made by Ms. Moredock as to the fees requested based on the time spent by counsel. The file is replete with efforts to find out what Ms. Moredock was holding that belonged to the conservatorship and efforts to obtain its return. Mr. Smith stated that the document not signed until today had been presented to Ms. Moredock on October 18, 2012. All fees claimed as damages were incurred after that date. The Court concludes that the time expended and the charges made were necessary and appropriate to recover the ward's assets.

restitution amount set by the district court in this case has a reasonable basis in the evidence and is neither speculative nor imaginary.  We affirm.

**AFFIRMED.**