# IN THE COURT OF APPEALS OF IOWA

No. 17-0931
Filed May 2, 2018

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**TERRAN E. ROACHE,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Story County, James B. Malloy, District Associate Judge.

　　　The defendant appeals from the district court order requiring him to pay restitution. **AFFIRMED.**

　　　John L. Dirks of Dirks Law Firm, Ames, for appellant.

　　　Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

　　　Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**POTTERFIELD, Judge.**

Terran Roache appeals from the district court order requiring him to pay $3557.08 in restitution.

In October 2016, Roache was charged with eleven crimes in two separate trial informations, stemming from a rash of automobile burglaries reported to the Ames police on two days earlier that month. Roache reached a plea agreement with the State, whereby he agreed to enter guilty pleas to one count of second-degree criminal mischief and one count of third-degree burglary and to pay restitution on all eleven of the counts. In return, the State agreed to dismiss the other nine charges.

Later, the State filed a statement of pecuniary damages in the amount of $4515.80. As part of the damages, the State included $1900 to Jordan Hagedon for a "Northland CDL Training book" and $958.72 to another victim for the repair of a vehicle window. The court approved the statement of pecuniary damages and filed an order requiring Roache to pay the full $4515.80.

Roache objected to the restitution order—specifically the amounts listed above—as unreasonable. He also claimed the State had not established a causal connection between his offense and the CDL training book.

At a hearing on the matter, the victim who submitted the $958.72 estimate did not appear, and the estimate was not received into evidence. Hagedon appeared and was called to testify. He testified he had paid to take a class through Northland CDL Training & Licensing; as part of the course work, he had received a book entitled, "Pre-Trip Inspection Study Guide," which was a "published, marked, and copyright booklet" and "the sole property of Northland CDL Training."

At the time he received the booklet, he signed an agreement stating he was "fully aware" he was responsible for returning the study guide and "fully understand[s]" he would be fined for failing to do so. The State admitted into evidence the signed agreement, which Hagedon had signed on September 22, 2016. Hagedon further testified the study guide was in his backpack, which Roache had stolen when he broke into Hagedon's vehicle. The study guide was apparently never recovered. Although the signed agreement did not include the amount of the fine for failing to return the study guide, the State also admitted into evidence a second form Hagedon had signed with Northland CDL Training & Licensing—this one on October 10, a day or two after the guide was taken. The second form stated, in part, "By losing and not returning the said study guide on my final testing date, I also fully understand I will be charged a fine 4x the course tuition. The calculated charge for this course is $1900." Hagedon had not yet paid Northland, stating, "They've been waiting for what we would hear from restitution," but testified he had an outstanding balance with them for the full amount of the fine. On cross-examination, Hagedon testified the study guide "was a small booklet, soft covered" and approximately "six-by-eight or ten inches in diameter." He agreed the value or cost of the book itself was not $1900. Hagedon was asked by the court if he had talked to the company about waiving the fine since the book was stolen rather than lost; Hagedon responded:

> I did. All they said was that they reiterated the fact that people have not returned them in the past, and they do charge the four times the cost of the class. And I did ask that, and they said that if I did get money out of the restitution, they'd like to see that, because it's still a risk to them, I guess, with their copyrighting or their—they wrote that book, they publish that book themselves, and they didn't want that getting out.

The court also asked Hagedon if he knew what would happen if he failed to pay the fine or if it was not ordered as restitution, and he indicated he did not know.

In its written ruling, the district court denied the claim for the windshield repair but affirmed the rest of the restitution order, requiring Roache to pay $3557.08 in restitution. In doing so, the court stated:

> The "damage" to [Hagedon] for failing to return the study guide came to $1900. But for [Roache's] criminal actions, [Hagedon] would not have been assessed that "fine." The court would presume that $1900 far exceeds the actual cost to print the study guide, but the actual cost of the study guide does not reimburse [Hagedon] for the loss he sustained as a result of [Roache's] actions. The amount claimed for damages is approved in the amount of $1900 for the study guide.

Roache appeals the district court's ruling.

"We review restitution orders for correction of errors at law." *State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013). "In reviewing a restitution order 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *Id.* (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)).

While Roache disagrees with the amount of the fine associated with the lost study guide, nothing in the record suggests the amount of the fine was exaggerated by Hagedon. Roache presented no contradictory evidence. In fact, Hagedon testified Northland refused to waive the fine and "reiterated the fact that people have not returned them in the past, and they do charge the four times the cost of the class." Substantial evidence supports the conclusion the fine was $1900. Next, Roache implies that he should only be responsible for the cost of reprinting the book or the actual value of the book, but doing so loses sight of the

purpose of restitution. *See Bonstetter*, 637 N.W.2d at 165 ("The word 'restitution' connotes restoring or compensating the victim for loss. Unlike other forms of penal sanctions, restitution forces the offender to answer directly for the consequences of his or her actions."). Here, Hagedon had an outstanding balance of $1900 with Northland; the outstanding balance would not be satisfied by proffering the value of the book. *See id.* at 166 ("A restitution order is not excessive if it bears a reasonable relationship to the damage caused by the offender's criminal act."). And "[o]nce the causal connection is established by a preponderance of the evidence, 'the statute allows recovery of 'all damages'. . . which the state can show by a preponderance of the evidence." *Id.* at 168 (citations omitted).

Much of Roache's causation arguments—the idea that it was not his action of stealing the study guide that resulted in the $1900 outstanding balance—hinge on his ideas of actions Hagedon could take so as not to pay the outstanding balance. He claims Northland decided on an unreasonable value for the fine and that the contract Hagedon signed after the study guide was taken is a contract of adhesion. But Roache has provided no authority for the proposition that the victim must do whatever is necessary to reduce the defendant's restitution obligation. It is undisputed that at the time of the restitution hearing, Hagedon had an outstanding balance of $1900 to Northland.

The record reflects that Hagedon was not aware what amount he would be fined by Northland if the study guide was not returned, but he had signed an agreement recognizing that he would be fined in such an instance. We agree with the district court's reasoning: "But for [Roache's] criminal actions, [Hagedon] would not have been assessed" a fine, which—although the amount was unknown at the

time of the signed agreement—was previously provided for, and even though $1900 is presumably more than the actual cost of the study guide, "the actual cost of the study guide does not reimburse [Hagedon] for the loss he sustained." Hagedon's loss was also within the scope of liability of Roache's action,[1] as it was likely—and presumably Roache's hope—that the backpack he stole from Hagedon's car would contain valuable items. In fact, the bag also contained prescription eyeglasses, a MacBook Pro computer and charger, and clothing.

Because the $1900 outstanding balance is a damage that is causally related to Roache's criminal activities and was properly included in the restitution order, we affirm. *See Bonstetter*, 637 N.W.2d at 165 ("Any damages that are causally related to the criminal activities may be included in the restitution order.").

**AFFIRMED.**

---

[1] Historically, in criminal cases, issues of causation have been analyzed in much the same manner as causation in civil cases. *See State v. Murray*, 512 N.W.2d 547, 550 (Iowa 1994). In the case of *Thompson v. Kaczinski*, 774 N.W.2d 829, 836–39 (Iowa 2009), our supreme court adopted the Restatement (Third) of Torts concept of "scope of liability" in place of legal or proximate cause in civil cases. Under the Restatement (Third) of Torts, "An actor's liability is limited to those . . . harms that result from the risks that make the actor's conduct tortious." *Thompson*, 774 N.W.2d at 838 (citation omitted); *see also In re J.S.*, No. 13-0174, 2013 WL 5291959, at *5 (Iowa Ct. App. Sept. 18, 2013) (applying the "scope of liability" in considering causation within a restitution claim).