STATE of Iowa, Appellee,

v.

Nicholas John BAUER, Appellant.

No. 66231.

Supreme Court of Iowa.

Sept. 29, 1982.

Chris Odell, Asst. Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Mark Soldat, Kossuth County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, UHLENHOPP, McCORMICK and McGIVERIN, JJ.

LeGRAND, Justice.

Defendant was convicted of the crime of sexual abuse in the third degree in violation of Iowa Code section 709.4. The trial court sentenced him to a term of not more than ten years in the penitentiary pursuant to Iowa Code section 902.9. On appeal the Iowa Court of Appeals affirmed the judgment. We granted further review, and we also affirm the sentence imposed by the trial court.

Defendant's petition for further review abandoned several errors relied on for reversal before the court of appeals. The matter comes before us on two issues:

1. The trial court submitted the case on an improper standard of proof concerning consent, contrary to the provisions of Iowa Code section 709.5.
2. The trial court erred in admitting evidence of a defendant's prior arrests.

We accordingly limit our discussion to these two matters.

Before reaching the merits, we give a brief review of the evidence. The complainant was a tenant in a farmhouse owned by the defendant's parents. She had occasion to meet defendant several times when he did some repair work around the premises for his parents. The two also met several times at a local bar and at least one party which both had attended. Their acquaintance was casual and limited to an exchange of pleasantries. They had never been out together nor had defendant ever visited at complainant's home as a guest. On one occasion defendant suggested that the two "get together for a private party." The complainant declined by suggesting that "some other time" might be more appropriate.

On the night of the crime, the complainant left her three children at their babysitter's and went out for the evening. She returned home alone around midnight, locked the doors, and opened a window in the living room, where she slept. Sometime around 2:00 A.M. she was awakened by someone who kissed her on the lips and said, "Kathy, how are you doing?" Because of the darkness, she was unable to identify her visitor and asked who it was. He responded, "It is me. Who did you think it was?"

The testimony concerning what happened thereafter is in dispute. The defendant says that the two held hands, continued to kiss, and engaged in conversation. The complainant denies there was any further conversation or embracing. Instead, she testified defendant removed his trousers, lay down on top of her on the couch where she had been sleeping, and started to re-move her underpants. She made no resistance and voiced no objection except to say, "Don't. I am on the rag." Defendant said, "Don't worry about it." He continued with the removal of her undergarment.

Defendant thereafter had sexual intercourse with complainant twice. During these occasions she made neither verbal nor physical protest. At one time she actively assisted him when he was having difficulty in achieving penetration. After the second act of intercourse, the complainant asked if she could get a cigarette and defendant consented. She went to the kitchen, lit a cigarette, and returned to the living room. Again asking permission first, she then went upstairs to the bathroom, dressed, and upon her return, found defendant asleep. It was only then, aided by a light from the kitchen, and peering closely at her sleeping assailant, that she identified him as the defendant. Satisfying herself that he was surely asleep, she left the premises, got in her car, and drove to the home of a friend, Sandra Wieshaar. At defendant's trial, Ms. Wieshaar testified the complainant was "pretty hysterical" when she arrived, that she was "shaking real bad", and that she kept repeating, "Nick Bauer raped me."

### I. Standard of Proof.

The only real issue in this case is whether the complainant consented to the acts of sexual intercourse. The fact that they occurred is admitted.

Defendant argues there was nothing said or done which suggested non-consent, that the complainant's conduct was consistent only with consent, and that he cannot be guilty of the crime charged because he was justified in believing she was a willing partner.

At trial, the complainant explained her failure to offer more direct and positive resistance by saying she was afraid to do so. She said she did not make an outcry because there was no one to hear her. She did not attempt to repel defendant because she was frightened. She described herself as being "scared to death." She felt "para-

lyzed" as far as physical resistance was concerned. A recent incident in which the body of a murdered woman was found in a ditch "flashed across [her] mind." She related this to her own plight.

To paraphrase defendant's position: Is it sufficient under section 709.5 to prove the complainant's *subjective* lack of consent or must there be proof beyond a reasonable doubt by *objective* evidence that defendant was aware of her non-consent?

Although this question has not previously been before this court, it is a matter which has long received the attention of commentators and scholars. *See, e.g.,* Model Penal Code § 312.1 commentary at 308 (1980); 4 J. Yeager & R. Carlson, *Iowa Practice* § 203, at 213 (1979); 75 C.J.S. *Rape* §§ 11, 15 (1962). The answer must lie in the intention of the legislature in enacting what is now chapter 709 of the Iowa Criminal Code on sexual abuse, which became effective on January 1, 1978. Prior to that time, there could be no conviction for rape (now an offense within the definition of "sexual abuse") unless the State could prove the victim had "exerted the utmost resistance to the attack." *State v. Holoubek,* 246 Iowa 109, 111, 66 N.W.2d 861, 863 (1954). The requirement for "utmost resistance to the attack" was case law. It was not based on statute, nor was it codified in the new Iowa Criminal Code, as applicable here, where, sexual abuse is defined in section 709.4 as follows:

> Any sex act between persons who are not at the time cohabiting as husband and wife is sexual abuse in the third degree by a person when the act is performed with the other participant in any of the following circumstances:
>
> 1. Such act is done *by force or against the will of the other participant.*

(Emphasis added).

"By force or against the will of the other participant" is treated in section 709.5 as follows:

> Under the provisions of this chapter it shall not be necessary to establish physical resistance by a participant in order to establish that an act of sexual abuse was committed by force or against the will of the participant. However, *the circumstances surrounding the commission of the act may be considered in determining whether or not the act was done by force or against the will of the other.*

■ Defendant insists the present statutes on sexual abuse have not changed the former requirement of "utmost resistance" and that this must necessarily be manifested by applying an objective test. We do not agree. Fear has always been recognized as a substitute for the resistance which our cases otherwise required. *State v. Gray,* 216 N.W.2d 306, 307–08. (Iowa 1974); *State v. Holoubek,* 246 Iowa 109, 113, 66 N.W.2d 861, 864 (1954). It is true that in these cases there was either an act of violence or a threat of violence with the apparent power to carry out the threat. The present statute, however, (section 709.-5) specifically directs that the question whether the sexual act was committed "by force or against the will" of the victim should be decided by considering the circumstances surrounding the act. This, we take it, means *all* the circumstances, subjective as well as objective.

■ It is true defendant did not threaten complainant and used no force except that which is necessary for the act of sexual intercourse itself. We believe, however, that the jury could—and obviously did—believe complainant when she testified to fear which rendered her incapable of protest or resistance. This is all our statute demands. There is no merit to defendant's argument to the contrary.

## II. *Impeachment Testimony.*

The second issue raised is that the trial court erred in permitting defendant to be impeached by testimony concerning his previous arrests. Although it is questionable whether this alleged error was properly preserved for appeal, we consider the matter on its merits.

Defendant testified he originally gave the police a false statement concerning his actions because he was frightened by being

placed under arrest. On cross-examination, the State attempted to show his story about being frightened was not credible because he had previously been arrested and presumably would not experience fear because of that fact. The State specifically disavowed any intention to use the arrest or arrests to impeach defendant's general credibility as is shown by the following exchange:

MR. DOTSON (defense counsel):

Excuse me, your Honor. If this man has a prior felony conviction that [the county attorney] wants to impeach this young man with, that is fine. If he wants to go into his traffic record, I am going to object at this point. It is an improper question on the part of the State.

MR. SOLDAT (county attorney):

I don't care about his convictions, not going into his convictions. What I am going into is the quality of his mind upon arrest that was brought up on direct examination. I would like to show this was not a new experience for this young man and he had no reason to be frightened by such an experience.

 Evidence of an arrest is not admissible to impeach a witness. It does not connote guilt nor reflect upon credibility. But that does not mean it is never admissible for other purposes. A defendant in a criminal case who takes the stand submits himself to cross-examination the same as any other witness. *State v. Conner,* 241 N.W.2d 447, 455 (Iowa 1976). Iowa R.Crim.P. 19.

In the present case defendant undertook to explain away his false statement to the police by attributing it to fear upon being arrested. This permitted the State to show he was not fearful. Whether a prior arrest would serve this purpose is debatable. It might be argued a prior arrest would make one more, rather than less, fearful. It might also be argued an isolated arrest for an undisclosed reason at an undisclosed time would be so prejudicial as to outweigh any slight probative value. However, these matters were never raised. Defendant treated the question as though it was offered for general impeachment purposes and objected only on that ground, which presents no basis for reversal.

Finding no reversible error, we affirm the judgment.

AFFIRMED.