# IN THE COURT OF APPEALS OF IOWA

No. 16-2150
Filed February 7, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**XAVIER GARRETT DEY WYNN,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Xavier Wynn appeals from his convictions following a jury trial for third-degree sexual abuse and criminal mischief. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DANILSON, Chief Judge.**

Xavier Wynn appeals from his convictions following a jury trial for third-degree sexual abuse, in violation of Iowa Code sections 709.1(1) and .4(1) (2016), and criminal mischief, in violation of sections 716.1 and .5.[1] Wynn contends defense counsel rendered ineffective assistance by failing to object to jury instructions. Wynn also asserts there is insufficient evidence to establish the lack of consent necessary to sustain his conviction for third-degree sexual abuse and to establish the value of damaged property to support his third-degree-criminal-mischief conviction. Wynn maintains defense counsel provided ineffective assistance in failing to move for judgment of acquittal on the particular insufficient-evidence grounds raised on appeal. We find Wynn has not shown defense counsel provided ineffective assistance and affirm.

**I. Background Facts & Proceedings.**

This matter arose in March 2016 when S.B. alleged Wynn assaulted and raped her. S.B. testified she and Wynn met through a social-media application and began seeing each other about one and one-half weeks prior to the night of March 27, 2016. S.B. and Wynn made plans to meet that night at the home where Wynn lived. However, when S.B. arrived at around 10:15 p.m., Wynn was angry and accused S.B. of getting a ride to his residence from another man. S.B. testified Wynn was also angry because she had refused to let him look through her cell phone a few days prior. S.B. stated through the course of the night Wynn threw her into a glass sliding door, pushed her head into a television,

---

[1] Wynn was also found guilty of assault causing bodily injury, in violation of sections 708.1(2)(a) and .2(2), but does not challenge that count on appeal.

picked her up by her hair and threw her to the ground, and choked her with his arm or hands three times. Wynn also broke S.B.'s cell phone by throwing it to the ground, causing it to shatter. S.B. said Wynn would not let her leave, and she was afraid to attempt to leave the residence after Wynn had exhibited violent behavior. Eventually, at about three or four in the morning—after the third time Wynn choked S.B.—S.B. convinced Wynn to let her sleep. S.B. stated she was awoken shortly thereafter by Wynn pulling her pants and underwear down to her knees. Wynn proceeded to have intercourse with S.B. S.B. told Wynn "no" and attempted to push him away, but she stopped resisting because she feared for her safety based on Wynn's previous actions. S.B. testified:

> At that point I was just, . . . I was like either I'm going to say no and resist and have something bad happen or just say no and try to resist as much as I can, but just for my own safety, I guess I let it happen.

The next morning Wynn permitted S.B. to use his cell phone to call her father for a ride. S.B. went to the hospital where her injuries were evaluated and a rape kit was completed. S.B. had visible bruising and swelling on her forehead, bruises on her arms, bumps on the back of her head, irritation around the roots of her hair, and a cut above her left eye. The rape kit results indicated the presence of seminal fluid in S.B.'s underwear and vagina matching Wynn's DNA.

After a jury trial on October 12-14, 2016, the jury returned its verdict finding Wynn guilty of third-degree sexual abuse, assault causing bodily injury, and third-degree criminal mischief. Wynn appeals.

**II. Standard of Review.**

We review ineffective-assistance-of-counsel claims de novo. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). To prevail on an ineffective-assistance-of-counsel claim, Wynn must show by a preponderance of the evidence defense counsel failed to perform an essential duty and prejudice resulted. *See id.* at 495. Both failure to perform an essential duty and prejudice must be established for the claim to be successful. *Id.*

**III. Jury Instructions.**

(*1*) *Jury Instruction 17.* Wynn first asserts defense counsel provided ineffective assistance by failing to object to Jury Instruction 17. Instruction 17 provided:

> Evidence has been offered to show that the defendant made statements at an earlier time and place.
> If you find any of the statements were made, then you may consider them as part of the evidence, just as if they had been made at trial.
> You may also use these statements to help you decide if you believe the defendant. You may disregard all or any part of the defendant's testimony if you find the statements were made and were inconsistent with the defendant's testimony given at trial, but you are not required to do so. Do not disregard the defendant's testimony if other evidence you believe supports it or you believe it for any other reason.

Wynn argues Instruction 17's indication that inculpatory statements made by Wynn to S.B. could be considered as if made in court was a "misstatement of the law and a constitutional violation." He also argues the instruction was contradictory to Instruction 10, which instructs jurors that evidence is testimony in court. Finally, he argues the instruction shifted the burden of proof and allows

the jury to presume Wynn made the statements. Wynn does not challenge admission of the statements under Iowa Rule of Evidence 5.801(d)(2).[2]

Wynn contends because Jury Instruction 10 "advise[d] jurors that 'Evidence' is 'Testimony in person,'" and Instruction 17 informed them to treat Wynn's out-of-court inculpatory statements as evidence as if produced at trial, the jury would have been confused. He cites *State v. Hoyman*, 863 N.W.2d 1, 19-20 (Iowa 2015), for the principle that contradictory and confusing instructions require a new trial. We view the contention that the jury was confused as mere speculation. There was no clear contradiction, but rather Instruction 17 provides an explanation of what weight may be given to an out-of-court admission or inculpatory statement. Without Instruction 17, the jury would have understood by Instruction 10 that the admissions or inculpatory statements were matters outside of the evidence and were to be given no weight. We do not find the instructions confusing or contradictory.

Wynn also argues Instruction 17 shifted the burden of proof to Wynn because it allowed the jury to presume that Wynn made the statements and that they were truthful. Wynn argues he was therefore forced to testify to rebut that presumption in violation of his constitutional right against self-incrimination.

In support of this argument, Wynn cites to *State v. Hansen*, 203 N.W.2d 216, 219-20 (Iowa 1972), in which our supreme court determined a statute that provided "the existence of more than ten hundredths of one percentum by weight

---

[2] Iowa Rule of Evidence 5.801(d)(2) provides: "A statement that meets the following conditions is not hearsay: . . . The statement is offered against an opposing party and . . . [w]as made by the party in an individual . . . capacity."

of alcohol in the defendant's blood [was] 'presumptive evidence' that he was under the influence of an intoxicating beverage" was unlawful because it created a "[c]onclusive presumption [of intoxication] if evidence [was] not produced to rebut it." In *Hansen*, the court found unconstitutional a portion of the instruction requiring the defendant to present evidence to rebut the presumption, and if no evidence was presented, the rebuttable presumption converted to a conclusive presumption of guilt. 203 N.W.2d at 220.

Here, the instruction stated "[*i*]*f* you find any of the statements were made,"[3] which required the jury to evaluate the veracity of the claim the statements had been made before considering them as evidence of Wynn's guilt. While Wynn was within his right to choose to testify at trial to address the inculpatory statements and provide his version of events, the admission of his out-of-court statements did not force his testimony. The out-of-court statements, as Wynn concedes, were properly admitted under rule 5.801(d)(2) and were thus clearly admissible as evidence of Wynn's guilt. *See* Iowa R. Evid. 5.801(d)(2); *State v. Newell*, 710 N.W.2d 6, 18 (2006) (explaining non-hearsay statements— including statements made by the defendant and offered against the defendant— were admissible). We also observe Instruction 17 makes no reference to a presumption or an inference. Thus, we are unable to say Wynn was convicted on the basis of a presumption.

(*2*) *Jury Instruction 21.* Wynn also challenges defense counsel's failure to object to Jury Instruction 21, which provided:

---

[3] Emphasis added.

Concerning element number 2 of Instruction 19, the State must prove that the defendant committed a sex act "by force or against the will" of S.B. In order to do so, however, the State does not have to prove that S.B. physically resisted the defendant's acts. The force used by the defendant does not have to be physical. It may consist of threats of violence against S.B. or another person, which overcame S.B.'s will by fear.

You may consider all of the circumstances surrounding the defendant's acts in deciding whether the acts were done by force or against the will of S.B.

Wynn argues Jury Instruction 21 is a misstatement of the law and defense counsel "had a duty to request an instruction compelling the State to prove that Mr. Wynn was aware of S.B.'s refusal to consent to the act." Wynn asserts defense counsel should have requested language requiring the State to show Wynn knew or should have known the act was against S.B.'s will to be included in Jury Instruction 21.

Iowa Code section 709.4(1)(a) requires only that it must be shown the sex act was "done by force or against the will of the other person." Section 709.5 further provides,

[I]t shall not be necessary to establish physical resistance by a person in order to establish that an act of sexual abuse was committed by force or against the will of the person. However, the circumstances surrounding the commission of the act may be considered in determining whether or not the act was done by force or against the will of the other.

In *State v. Bauer*, 324 N.W.2d 320, 322 (Iowa 1982), our supreme court was called upon to answer the question: "Is it sufficient under section 709.5 to prove the complainant's *subjective* lack of consent or must there be proof beyond a reasonable doubt by *objective* evidence that defendant was aware of her non-consent?" The court determined that although the victim did not resist the sexual act, consideration of the subjective and objective circumstances supported the

victim's assertion that the fear imposed upon her rendered her incapable of resistance and satisfied the requirement that the act be carried out by force or against the will of the victim. *Bauer*, 324 N.W.2d at 322. Thus, "our supreme court held that a defendant's awareness of a putative sexual abuse victim's lack of consent is not an element of third-degree sexual abuse." *State v. Christensen*, 414 N.W.2d 843, 845 (Iowa Ct. App. 1987).

It is not required, as Wynn asserts, that the jury find there is objective proof of Wynn's knowledge respecting the lack of consent. Iowa courts have repeatedly held that we look to both the subjective and objective circumstances in determining if a sex act was completed by force or against the will of the other individual. *See State v. Meyers*, 799 N.W.2d 132, 143-44 (Iowa 2011); *Bauer*, 324 N.W.3d at 322; *State v. Karfis*, No. 07-1624, 2008 WL 4725154, at *7 (Iowa Ct. App. Oct. 29, 2008).

The legislature has also expressly excluded such a knowledge requirement from section 709.4(1)(a). Section 709.4(1)(c) provides an alternative by which a person may commit third-degree sexual abuse when "the act is performed while the other person is under the influence of a controlled substance" and "[t]he person performing the act knows or reasonably should have known that the other person was under the influence of the controlled substance." Thus, the legislature has considered and required the element of the defendant's knowledge to be established in other scenarios and could have included such a provision in section 709.4(1)(a). The legislature did not do so, and we read the section as it is written. *See State v. Anderson*, 782 N.W.2d 155, 158 (Iowa 2010) ("In determining what the legislature intended . . . we are

constrained to follow the express terms of the statute." (quoting *State v. Byers*, 456 N.W.2d 917, 919 (Iowa 1990)).

We find Jury Instruction 17 and Jury Instruction 21 were not improper and defense counsel had no obligation to object. Because defense counsel did not fail to perform an essential duty, Wynn's ineffective-assistance claim cannot prevail.

**IV. Sufficiency of the Evidence.**

Wynn also challenges the sufficiency of the evidence to support his convictions. Wynn acknowledges error is potentially not preserved on these claims because defense counsel did not raise the specific grounds asserted on appeal in the motion for judgment of acquittal.[4] Wynn requests we review the sufficiency claims under the premise of ineffective assistance for failing to raise the claims in the motion for judgment of acquittal. Specifically, Wynn contends there was insufficient evidence to establish the sex act occurred by force or against the will of S.B. and to establish the value of the damaged cell phone was between $500 to $1000.

> In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed "in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." "[W]e will uphold a verdict if substantial record evidence supports it." We will consider all the evidence presented, not just the inculpatory evidence. Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt. "Inherent in our standard of review of jury verdicts in criminal cases is the

---

[4] "To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial that identifies the specific grounds raised on appeal." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004).

recognition that the jury [is] free to reject certain evidence, and credit other evidence."

*State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) (alterations in original) (citations omitted).

(*1) Evidence Showing Lack of Consent.* Wynn maintains there is insufficient evidence to show a lack of consent to the sex act in this case. However, the case law in Iowa is clear that "[f]ear has always been recognized as a substitute for the resistance which our cases otherwise required" in establishing the sex act was done by force or against the victim's will. *Bauer*, 324 N.W.2d at 322. S.B. testified she was awoken by Wynn's actions of pulling her pants and underwear down and told Wynn "no" she did not want to have sexual intercourse. She also attempted to push him away but did not resist further for fear of her own safety. S.B. explained the course of events on March 27, 2016, and each act of violence by Wynn causing her specific injuries. Such violence occurring—according to S.B.'s testimony—hours prior to the sex act, was not so far removed to negate S.B.'s fear as Wynn suggests. The jury was entitled to give more weight to S.B.'s testimony than to Wynn's version of events. *See State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014) ("Our system of justice vests the jury with the function of evaluating a witness's credibility."). The record contains substantial evidence supporting Wynn's conviction for third-degree sexual abuse.

(2) *Value of Property Damaged.* Wynn also asserts there is insufficient evidence supporting his conviction for criminal mischief in the third degree. Iowa Code section 716.5(1)(a) states criminal mischief is criminal mischief in the third

degree if "[t]he cost of replacing, repairing, or restoring the property that is damaged . . . exceeds five hundred dollars, but does not exceed one thousand dollars."  At trial, S.B. stated she paid $200 to replace her broken cell phone in the form of an insurance deductible but also stated the phone was worth between $650 and $700.

Wynn cites to *State v. Hagen*, 840 N.W.2d 140, 146 (Iowa 2013), and argues the amount of damage to the phone is only $200 because the insurer paid the remaining amount and the insurer is not a victim who may recover restitution damages in this matter.  Section 910.2 specifically provides "the sentencing court shall order that restitution be made by each offender *to the victims* of the offender's criminal activities."  (Emphasis added.)  However, section 716.5(1)(a) does not limit the amount of damages to those incurred by a victim but rather generally requires the "cost of replacing, repairing, or restoring the property that is damaged" to "excee[d] five hundred dollars, but . . . not exceed one thousand dollars."  The fact that an insurer cannot be a "victim" for purposes of restitution, *see Hagen*, 840 N.W.2d at 148, does not necessarily exclude the insurer-paid portion of damages from consideration for purposes of meeting the requirements of section 716.5(1)(a).

The purpose of section 716.5 is to categorize the seriousness of the criminal-mischief offense.  It would not comport with the purpose of the statute to exclude any portion of damage paid by insurance.  This would result in often categorizing damage based on insurance deductibles rather than the damage done and would provide the benefit of insurance to defendants who damage, deface, alter, or destroy property.  If S.B. did not have cell phone insurance, the

cost to replace the phone would be $650 to $700. Wynn cannot argue his offense is of a lesser degree simply because S.B. had insurance. Thus, the record also contains substantial evidence supporting Wynn's conviction for criminal mischief in the third degree. Because Wynn's sufficiency-of-the-evidence claims fail, we find no prejudice to support Wynn's ineffective-assistance claims.

**V. Conclusion.**

Because we conclude Wynn has not established defense counsel rendered ineffective assistance in failing to object to jury instructions or to raise the particular sufficiency-of-the-evidence claims, we affirm.

**AFFIRMED.**