# IN THE COURT OF APPEALS OF IOWA

No. 19-0634
Filed April 29, 2020

**A.N.,**
    Plaintiff-Appellee,

**vs.**

**J.G.,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

J.G. challenges the sufficiency of the evidence supporting the district court's entry of a protective order pursuant to the Sexual Abuse Act (Iowa Code chapter 236A (2019)). **AFFIRMED.**

Gerald B. Feuerhelm of Feuerhelm Law Office, P.C., Des Moines, for appellant.

Sally Frank of Drake Legal Clinic, Des Moines, for appellee.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

A.N. and J.G. met online and began dating. Their relationship became a sexual one. During the course of the relationship, J.G. repeatedly inquired whether A.N. had interest in anal sex, attempting to talk A.N. into it. A.N. steadfastly declined.

Several months into the relationship, A.N. invited J.G. to the birthday party of A.N.'s roommate. The party was held at A.N.'s apartment. Both A.N. and J.G. drank alcohol throughout the evening, and both were intoxicated.[1] As the party wound down, A.N. and J.G. retired to A.N.'s bedroom for the night where they engaged in vaginal intercourse. During the course of the sexual activity, J.G. removed his condom. This alarmed A.N., who told J.G. to stop unless he was "about to finish." J.G. stopped, and the couple began talking. While they were talking, J.G. unexpectedly stuck his finger in A.N.'s anus. When A.N. expressed surprise, they began talking about how it felt, with the conversation largely consisting of J.G. trying to talk A.N. into engaging in anal sex. A.N. eventually relented and positioned herself to voluntarily participate, and J.G. began to attempt to anally penetrate A.N. A short time into the activity, A.N. realized it "[wa]sn't really working" and experienced discomfort and pain, so she told J.G. to stop. J.G. did not respond and continued doing what he was doing. After asking him to stop once or twice, A.N. began crying, but J.G. still did not stop. She eventually went

---

[1] Although the evidence establishes both parties were intoxicated, there is insufficient evidence to conclude either party was incapacitated to the point of being unable to give consent or otherwise control the party's conduct, or was "mentally incapacitated" or "physically helpless" as those terms are defined in Iowa Code section 709.1A (2019).

still and then dropped from her hands and knees to lie flat on her stomach while continuing to cry. Three to five minutes later, J.G. finally stopped and asked A.N. if she was okay. A.N. did not know how to respond, so just laid there and both parties went to sleep. The next morning, J.G. asserts they had sex initiated by A.N. A.N. testified she did not recall whether they did or not, but she acknowledged they may have engaged in some form of sexual activity. During an unknown period of time following the incident, the parties exchanged text or Snapchat messages in which J.G. apologized for his conduct.

A.N. filed a petition seeking relief from sexual abuse pursuant to Iowa Code chapter 236A. Following a hearing, the district court found the vaginal intercourse and any sexual activity that occurred the next morning, if any, was consensual. As for the anal-sex event that formed the basis for A.N.'s cause of action, the district court found as follows:

> It is clear to me that—which is not uncommon or unheard of—that the notion of consent is a fluid concept in the sense that it can be given, taken back and regiven, all, perhaps, in the course of one interaction.
> And I think that's what's happened here. There may have been consent at one point, and there may have been consent at a later point, but it is clear to me that at some point during the interaction that we're talking about when the defendant was attempting to initiate or engage in anal sex, that consent, which may have first been given, was retracted and so that any subsequent contact between [them] would have been without her consent. So I am finding based on the evidence that I've heard—while this would not be enough to prove, I believe, in criminal court beyond a reasonable doubt that sexual abuse occurred, it's clear to me that taking into account the witness's testimony, the defendant's own admissions that we discussed that are [included in the text or Snapchat messages presented] and all the other circumstances of this case, that plaintiff has established by a preponderance of the evidence that the defendant has committed an act of sexual abuse and that the other prerequisites for a final protective order under 236A should issue. That order will issue.

The district court issued a protective order accordingly. J.G. appeals, challenging the sufficiency of the evidence supporting the finding sexual abuse occurred.

## I.      Standard of Review.

As the parties note, Iowa Code chapter 236A is relatively new, and we have limited appellate precedent to guide us in interpreting it. *See McConkey ex rel. B.M. v. Huisman*, No. 18-1399, 2019 WL 3317373, at *2 (Iowa Ct. App. July 24, 2019) (noting a chapter 236A proceeding "shall be held in accordance with the rules of civil procedure, except as otherwise set forth" in statute (quoting Iowa Code § 236A.9)). Due to chapter 236A being similar in organization, language, and scope to chapter 236, the parties jointly suggest looking to cases interpreting chapter 236 for guidance on standard of review. We agree with the parties' suggestion. A.N.'s brief points out there are cases holding proceedings brought pursuant to chapter 236 are actions at law and there are other cases holding such proceedings are actions in equity. *Compare Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997) (holding a proceeding under chapter 236 in which the district court rules on objections as they are made is a law action and review is at law such that the district court's findings are binding if supported by substantial evidence), *with Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001) (holding actions brought pursuant to chapter 236 are heard in equity and deserve de novo review). Both parties concede the district court ruled on objections as they were made and the action was tried as an action at law; therefore they agree the standard of review should be whether there was substantial evidence supporting the district court's ruling. *But see T.D. v. J.P.*, No. 19-0607, 2020 WL 1548516, at *2 (Iowa Ct. App.

Apr. 1, 2020) (finding the district court tried the plaintiff's chapter 236A claim in equity and applying de novo review). We agree with the parties' conclusion in this regard as well.

## II.     Legal Standards.

Iowa Code section 236A.3 authorizes a person to seek relief from sexual abuse by filing a petition seeking such relief. As relevant to this proceeding, "sexual abuse" means any commission of a crime defined in chapter 709. *See* Iowa Code § 236A.2(5). The only crime that would fit the circumstances of this case is sexual abuse in the third degree, which, in relevant part, is defined by Iowa Code section 709.4(1)(a) as occurring when a person "performs a sex act . . . against the will of the other person." The term "sexual abuse" as used in section 709.4 is defined, in relevant part, by section 709.1(1) as, "Any sex act between persons . . . when the act is performed with the other person . . . against the will of the other." Finally, the term "sex act" is defined by section 702.17, in relevant part, as follows:

> The term "sex act" . . . means any sexual contact between two or more persons by any of the following:
>     1. Penetration of the penis into the vagina or anus.
>     2. Contact between . . . the genitalia of one person and the genitalia or anus of another person.

*See State v. Constable*, 505 N.W.2d 473, 477-78 (Iowa 1993) ("[T]he commission of any single physical contact described in section 702.17 is a sex act sufficient to complete a sexual abuse crime when other proscribed circumstances exist."). We have not included the portions of the definitions addressing being incapacitated or under the influence of a drug, because we find those portions of the statutes inapplicable. As previously noted, while both parties were intoxicated, the

evidence does not support a finding either party was intoxicated to the point of being incapacitated or incapable of giving consent.

## III.    Discussion.

Based on the above-quoted definitions, there is no dispute J.G. performed a sex act with A.N.[2]  *See* Iowa Code § 702.17.  Therefore, the only issue is whether the sex act was "against the will of" A.N.   *Id.* §§ 709.1(1), 709.4(1)(a).   "[T]he 'against the will of another' standard [of sections 709.1 and 709.4] seeks to broadly protect persons from nonconsensual sex acts . . . ."  *State v. Kelso-Christy*, 911 N.W.2d 663, 667 (Iowa 2018) (quoting *State v. Meyers*, 799 N.W.2d 132, 143 (Iowa 2011)).  "Indeed, in furtherance of the statute's clear purpose, we inquire into whether the victim gave meaningful consent and consider the 'circumstances indicating any overreaching by the accused, together with circumstances indicating any lack of consent by the other person.'"  *Id.* (quoting *Myers*, 799 N.W.2d at 143).

This case is unusual in that cases of sexual abuse in the third degree under the "against the will of the other" theory frequently involve an incident over which the dispute is whether the entire incident was or was not against the will of the other.  *See, e.g.*, *State v. Bauer*, 324 N.W.2d 320 (Iowa 1982); *State v. Christensen*, 414 N.W.2d 843 (Iowa Ct. App. 1987).  Here, in contrast, it is undisputed the incident began on a consensual basis, but the consent was

---

[2] While A.N.'s testimony suggests there was at least partial penetration of her anus by J.G.'s penis, J.G. testified there was no penetration.  Resolving this conflict in the evidence is not necessary, as there is no dispute there was contact between J.G.'s penis and A.N.'s anus, which satisfies the definition of "sex act" regardless of whether penetration was actually achieved.  *See* Iowa Code § 702.17(2).

withdrawn during the course of the event. J.G. does not argue consent, once given, cannot be withdrawn. He also does not dispute that A.N. withdrew her consent at some point. His claim is that he stopped performing the sex act as soon as he became aware A.N. had withdrawn consent.

J.G.'s position is "when a couple in a sustained, sexual relationship engage in consensual sex, and during intercourse one person withdraws their [sic] consent, . . . the party withdrawing consent must reasonably communicate that to the other party." In assessing whether J.G.'s performance of the sex act was against A.N.'s will, A.N. was not required to prove J.G. had knowledge of her lack of consent. *See Christensen*, 414 N.W.2d at 846 (citing *Bauer*, 324 N.W.2d at 322, in holding a defendant's knowledge of his or her partner's lack of consent is not an element of sexual abuse in the third degree). However, in determining whether consent had been withdrawn, "the circumstances surrounding the commission of the act may be considered." Iowa Code § 709.5. This means we consider "*all* the circumstances, subjective as well as objective." *Bauer*, 324 N.W.2d at 322. Therefore, even though J.G.'s knowledge his actions were against A.N.'s will is not an element of the cause of action, his subjective awareness of the change in the status of consent is certainly part of the circumstances to be taken into account. Here, the district court took into account all the surrounding circumstances, including A.N.'s actions and how they impacted J.G.'s subjective awareness, and rejected J.G.'s claim that he stopped once A.N. had withdrawn her consent.

In addressing J.G.'s argument that the evidence established he stopped once consent was withdrawn, it is important to remember the burden of proof, the

standard of review, and the implications of those standards. Here, the burden of proof was on A.N. by a preponderance of the evidence. *See* Iowa Code § 236A.6(1). "A preponderance of the evidence is the evidence 'that is more convincing than opposing evidence' or 'more likely true than not true.'" *Martinek v. Belmond-Klemme Cmty. Sch. Dist.*, 772 N.W.2d 758, 761 (Iowa 2009) (quoting *Holliday v. Rain & Hail L.L.C.*, 690 N.W.2d 59, 63-64 (Iowa 2004)). Also, as previously noted, the standard of review is for corrections of errors at law, which means we are bound by the district court's findings if supported by substantial evidence. *Papillon v. Jones*, 892 N.W.2d 763, 770 (Iowa 2017). "Evidence is substantial if reasonable minds could accept it as adequate to reach the same findings." *Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa 1996). "When the challenge to the district court's ruling is lack of substantial evidence, we view the evidence in the light most favorable to the judgment." *Id.* "In our review, we liberally construe the district court's findings to uphold, rather than defeat, the result reached." *Id.*

The weakness in J.G.'s argument is it merely urges a different finding that may have been supported by the evidence, but it does not overcome the fact the district court's ruling to the contrary was supported by substantial evidence. *See id.* ("[I]n our review, the question we face is not whether the evidence might support a different finding, but whether the evidence supports the findings actually made."). While the district court may have had support in the record for a finding that J.G. stopped when A.N. had withdrawn her consent and never acted against her will, the district court found otherwise. That finding is also supported by the record. Viewed in the light most favorable to the district court's judgment, as we are

obligated to do, the evidence established J.G. continued with the sex act long after A.N. had withdrawn her consent and made J.G. aware of that fact. The evidence supports the finding A.N. was initially a willing, albeit reluctant, participant in the anal-sex act. However, fairly early in the act, A.N. was feeling discomfort and pain so she verbally told J.G. to stop one or two times. It is possible J.G. did not hear her, as A.N. acknowledged. However, the evidence established that, after A.N. told J.G. to stop, she began crying, stopped moving, and eventually slumped from her hands and knees to lie flat on her stomach while J.G. continued with the sex act for another three to five minutes before finally stopping. Furthermore, J.G.'s admissions in his text or Snapchat messages in which he acknowledged feeling horrible about the incident, admitted making a "bad mistake," admitted "I did it but I shouldn[']t have," and admitted he "definitely messed up" support the district court's findings. Although J.G. argues these were admissions expressing regret about talking A.N. into trying anal sex and not admissions of continuing after she had withdrawn her consent, the district court was free to view them as an admission of not stopping when the circumstances showed A.N. had withdrawn her consent.

Based on the evidence presented, the district court's finding that J.G. continued with the sex act after consent had been withdrawn was supported by substantial evidence.

Due to the fact that we affirm the district court's ruling for the reasons stated, we need not and do not address A.N.'s alternate argument that J.G.'s insertion of his finger into A.N.'s anus without notice constituted sexual abuse because A.N.

had informed J.G. repeatedly of her lack of interest in anal sex days to months before the incident at issue.

Finding substantial evidence supports the district court's finding, the judgment of the district court is affirmed.

**AFFIRMED.**